**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL C.,

                                         Plaintiff,

                - v -                                              Civ. No. 3:17-CV-1395
                                                                              (DJS)

NANCY A. BERRYHILL, *Acting Comm'r of*
*Soc. Sec.*,

                                         Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM                  PETER A. GORTON, ESQ.
Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY  13761

U.S. SOCIAL SECURITY ADMIN.                  VERNON NORWOOD, ESQ.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

### <u>DECISION AND ORDER</u>[1]

Currently before the Court, in this Social Security action filed by Michael C.

against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

for Judgment on the Pleadings. Dkt. Nos. 9 & 10. Plaintiff submitted a Reply brief. Dkt. No. 13. For the reasons set forth below, Plaintiff's Motion is denied, Defendant's Motion is granted, and the Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 14, 1963. Dkt. No. 8, Admin. Tr. ("Tr."), p. 206. Plaintiff reported completing the twelfth grade. Tr. at p. 200. He has past work experience as a truck driver, material handler, in labor/construction, and in distribution. *Id.* Plaintiff alleges disability due to alcoholism, anxiety disorder, panic attacks, back injury, alcohol dementia, blood clots, and problems with his legs. Tr. at p. 199.

### B. Procedural History

Plaintiff filed for supplemental security income in April of 2015, alleging disability beginning July 24, 2014. Tr. at p. 185. Plaintiff's application was denied on June 12, 2015, and Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Shawn Bozarth, on June 14, 2017. Tr. at pp. 66 & 25-52. On July 24, 2017, ALJ Bozarth issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 7-20. On November 21, 2017, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-4. This action followed.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity

2

since March 12, 2015, the application date.  Tr. at p. 12.  The ALJ next found that Plaintiff

had the following severe impairments: obesity, generalized anxiety disorder, panic

disorder, and adjustment disorder.  *Id.*  The ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. at p. 13.

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to

perform light work except:

> he can only occasionally stoop, crawl, and climb stairs, ramps, ladders,
> ropes, and scaffolds.  The claimant is limited to performing a low stress job,
> which is defined as involving only occasional decision-making, occasional
> use of judgment, and occasional changes in the work setting.  He requires
> simple, repetitive instructions.  He is also limited to performing a job that
> is goal oriented, rather than one involving a production pace or assembly
> line.

Tr. at p. 15.  Next, the ALJ determined that Plaintiff was unable to perform any past

relevant work.  Tr. at p. 18.  The ALJ found that Plaintiff was born on April 14, 1963 and

was an individual closely approaching advanced age on the date the application was filed,

has at least a high school education and is able to communicate in English.  *Id.*  The ALJ

found that transferability of job skills is not an issue in this case because Plaintiff's past

relevant work is unskilled.  Tr. at p. 19.  The ALJ then determined that, considering

Plaintiff's age, education, work experience, and residual functional capacity, there were

jobs that existed in numbers in the national economy that Plaintiff could perform, and that

Plaintiff was not under a disability since the date the application was filed.  Tr. at pp. 19-

20.

### D.  The Parties' Briefings on Their Cross-Motions

In his Motion, Plaintiff contends that the RFC is not supported by substantial evidence because it is not supported by any medical opinion, and the ALJ arbitrarily substituted his opinion for uncontradicted medical opinions regarding Plaintiff's ability to maintain a regular schedule and regarding his ability to walk and/or stand. Dkt. No. 9, Pl.'s Mem. of Law, pp. 10-14.  In addition, Plaintiff contends that the ALJ violated the treating physician rule by not giving Dr. Jackson controlling weight and by not giving good reasons for not crediting the opinion, and that the ALJ failed to assess certain limitations. *Id.* at pp. 14-17.  Plaintiff also contends that the ALJ improperly weighed Dr. Jenouri's two medical opinions.  *Id.* at pp. 17-18.

In addition, Plaintiff contends that it was error for the ALJ to not find Plaintiff's back impairments to be severe. *Id.* at pp. 19-21.  Finally, Plaintiff contends that the ALJ's Step Five determination is not supported by substantial evidence because he should have found Plaintiff disabled under the Grid Rule 201.12, and that the testimony of the vocational expert ("VE") at the hearing does not constitute substantial evidence because the hypothetical mirroring the ALJ's RFC did not properly account for Plaintiff's limitations, and because the VE provided job numbers utilizing the OES numbers, which refer to a broad range of positions including those which Plaintiff cannot perform.  *Id.* at pp. 21-24.

In response, Defendant contends that the ALJ properly found that Plaintiff's back impairment was not severe based upon the medical records and medical opinions, and that any error would be rendered harmless because the ALJ considered Plaintiff's non-

severe impairments throughout the remainder of the sequential evaluation. Dkt. No. 9, Def.'s Mem. of Law, pp. 10-12. Defendant contends that the ALJ properly assessed Plaintiff's RFC, based upon the medical records, and appropriately weighed the medical opinions in reaching the RFC. *Id.* at pp. 12-15. In addition, Defendant contends that the VE's testimony provided substantial evidence for the ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at pp. 15-18.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

### A. Plaintiff's Contentions Regarding the RFC

*1. The ALJ's Weighing of Medical Opinions*

*a. Dr. Jackson's Opinion*

Plaintiff contends that the ALJ violated the treating physician rule by failing to give controlling weight to Dr. Jackson's opinion and failing to give good reasons for not giving the opinion controlling weight; he also contends that the ALJ failed to address several limitations assessed by Dr. Jackson. Pl.'s Mem. of Law at pp. 14-17.

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) & 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d at 375 (internal quotation marks omitted) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Burgess v. Astrue*, 537 F.3d at 129). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)). "Although an explicit and 'slavish recitation of each and every factor' is not required, 'the ALJ's reasoning and adherence to the regulation [must be] clear.'"

*Colvin on behalf of G.R.K. v. Colvin*, 2017 WL 1167292, at *6 (N.D.N.Y. Mar. 28, 2017) (quoting *Atwater v. Astrue*, 512 Fed. Appx. at 70) (collecting cases). The ALJ must give "good reasons for not crediting the opinion." *Greek v. Colvin*, 802 F.3d at 375 (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d at 129-30). Plaintiff contends the ALJ improperly gave the treating physician's opinion less than controlling weight without performing the requisite analysis. Pl.'s Mem. of Law at p. 15.

The Court finds that the ALJ provided sufficient analysis and good reasons for assigning Dr. Jackson's opinion less than controlling weight. First, the ALJ identifies that Dr. Jackson is a treating source. Tr. at p. 17. Plaintiff contends that the ALJ's finding that the opinion was not consistent with the overall record was conclusory; however, the ALJ identified specific portions of the record that he found to be inconsistent with Dr. Jackson's opinion regarding Plaintiff's ability to lift weight, sit, stand/walk, and his need to change positions, as well as her opinion that Plaintiff would be absent from work at least three days per month. Tr. at p. 17 (describing findings from Dr. Jenouri's exams and Dr. Jackson's exams that the ALJ deemed inconsistent with Dr. Jackson's opinion). The ALJ was also clearly aware, though he did not recite it in detail, of the nature and history of Jackson's treating relationship with Plaintiff. *See* Tr. at p. 17; *Otis v. Soc. Sec. Admin., Comm'r,* 2013 WL 2422627, at *17 (D. Vt. June 3, 2013).

Given the ALJ's acknowledgement that Dr. Jackson is a treating source and the discussion of the consistency of her opinion with evidence from her treatment of Plaintiff as well as with other medical evidence in the record, the ALJ gave "good reasons" for discounting this opinion. While the ALJ could clearly have done more to explain in detail

9

each of regulatory factors, "[c]ourts conducting judicial review in social security cases [ ] do not require perfect opinions or rigid, mechanical, formulaic applications of governing legal principles." *Insel v. Colvin*, 2014 WL 4804282, at *7 (N.D.N.Y. Sept. 26, 2014) (citing *Atwater v. Astrue*, 512 Fed. Appx. at 70). "Under this circumstance, substantive adherence to the governing regulation is apparent." *Id.*; *see also Michael M. v. Comm'r of Soc. Sec.*, 2019 WL 530801, at *10 (N.D.N.Y. Feb. 11, 2019) ("the substance of the treating physician rule was not traversed"). As such, the Court finds that the ALJ's decision not to assign controlling weight to Dr. Jackson's opinion is not a basis for remand.

Plaintiff also contends that the ALJ failed to explain why he did not include in the RFC Dr. Jackson's "undisputed opinion that Plaintiff needs to change positions every 30 minutes" and that Plaintiff would likely be absent three days per month. Pl.'s Mem. of Law at pp. 16-17. The ALJ specifically noted that Dr. Jackson opined that Plaintiff would need to change position every 30 minutes, but rejected it in giving the assessment less weight. Tr. at p. 17. Other medical evidence of record supported the ALJ's finding. In particular, the ALJ gave more weight to Dr. Jenouri's opinion; even Dr. Jenouri's more restrictive 2016 opinion did not include such a restriction, only limiting Plaintiff to walking and standing for periods of two hours and four hours. Similarly, the ALJ noted that Dr. Jackson opined Plaintiff would be absent from work three days per month, but specifically found no support in the record for this limitation, noting that Plaintiff "attended all four of his scheduled consultative exams and his medical records do not reflect a history of missing scheduled appointments." *Id.* The opinions to which the ALJ

gives more weight do not provide these limitations. The ALJ's decision not to include these limitations is supported by substantial evidence and does not warrant remand.

### b. Dr. Jenouri's Opinions

Plaintiff contends that the ALJ improperly weighed Dr. Jenouri's opinions. Dr. Jenouri provided an opinion in 2015 and an opinion in 2016; Plaintiff contends that the ALJ's determination that the 2016 opinion was entitled to less weight was insufficiently explained. Pl.'s Mem. of Law at p. 17. He contends that the increased limitations opined in the 2016 opinion are supported by Dr. Jenouri's medical findings, and that the ALJ's analysis of the opinions contain multiple errors. *Id.* at p. 18.

"[T]he ALJ is free to resolve conflicts in the evidence and choose among properly submitted medical opinions." *Brown v. Colvin*, 2013 WL 3384172, at *5 (N.D.N.Y. July 8, 2013). Here, the ALJ explained why he gave the 2016 opinion less weight, describing in detail the medical records from the examination, specifically identifying which pieces of medical evidence do "not fully support the apparent increase in limitations." Tr. at pp. 16-17. Plaintiff contends that the ALJ's finding that the second assessment is "rather ambiguous" and his statement that he does not find the second assessment inconsistent with the assigned RFC are flawed; any lack of clarity in these statements does not defeat the ALJ's determination because he gave sound reasons for giving the 2016 opinion "somewhat less weight."

### 2. Plaintiff's Ability to Maintain a Regular Schedule

Plaintiff contends that there are four medical opinions regarding Plaintiff's ability to maintain a regular schedule, and that they all find at least a moderate diminishment,

and the ALJ was therefore required to include such a limitation in the RFC. Pl.'s Mem. of Law at pp. 8-10. Plaintiff notes that Dr. Moore and Dr. Reddy found that Plaintiff's psychiatric impairments moderately limited his ability to maintain a regular schedule, Dr. Slowik opined a marked limitation in Plaintiff's ability to maintain a regular schedule, and that Dr. Jackson indicated that Plaintiff would be absent three days per month. *Id.* at pp. 8-9 (citing Tr. at pp. 62, 292, 297, & 302).

The ALJ gave Dr. Jackson's assessment, including her assessment that Plaintiff would be absent three days per month, "less weight" because he did not find it consistent with the overall record. As discussed above in Point III.A.1, the ALJ was entitled to weigh the opinions before him, and gave good reasons for discounting this opinion. The ALJ also gave "greater weight" to the opinions of Dr. Moore and Dr. Reddy than that of Dr. Slowik. Tr. at p. 18. The ALJ explained that "[w]hile Dr. Slowik noted some limitations in attention, concentration and memory, Dr. Moore, who conducted actual testing, observed that the claimant worked with reflection and responded in a generally deliberate, orderly, and self-correcting manner. I also find Dr. Moore's opinions more persuasive since they were based upon actual test results." *Id.* The ALJ goes on to describe Plaintiff's self-reported activities and abilities that do not support portions of Dr. Slowik's opinion, specifically the portion regarding his ability to maintain a schedule. *Id.* The ALJ's weighing of the opinions of these two consultative examiners and state agency psychologist was proper. *See White v. Comm'r of Soc. Sec.*, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) ("Conflicts in evidence [ ] are for the Commissioner to resolve").

12

The ALJ gave more weight to Dr. Moore and Dr. Reddy's opinions, which opined Plaintiff's psychiatric impairments moderately limited his ability to maintain a regular schedule. However, a moderate limitation in the ability to maintain a regular schedule does "not necessarily preclude the ability to perform unskilled work." *Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)). Here, the ALJ limited Plaintiff to

> a low stress job, which is defined as involving only occasional decision-making, occasional use of judgment, and occasional changes in the work setting. He requires simple, repetitive instructions. He is also limited to performing a job that is goal oriented, rather than one involving a production pace or assembly line.

Tr. at p. 15. There is significant case law within the Second Circuit finding that providing RFC limitations such as "simple, repetitive instructions" and limiting the amount of judgment and changes in the work setting account for a claimant's moderate limitations in maintaining a schedule. *Shannon v. Berryhill*, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018); *Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4-5; *Landers v. Colvin*, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining . . . regular attendance"). As such, the ALJ accounted for the moderate limitations in maintaining a regular schedule opined by the medical opinions to which he gave weight.

### 3. Plaintiff's Ability to Perform Light Work

Plaintiff contends that the ALJ's determination that he could perform light work, which requires the ability to stand and/or walk up to six hours per day, is not supported by substantial evidence because neither the opinion of Dr. Jackson nor that of Dr. Jenouri provides that Plaintiff can do so. Pl.'s Mem. of Law at pp. 10-13. Plaintiff contends that the ALJ therefore impermissibly substituted his opinion for the medical opinions of record. *Id.*

The ALJ relied on the 2015 opinion of Dr. Jenouri, as well as his 2016 opinion to a lesser extent, in assessing Plaintiff's physical RFC. In his 2015 assessment, Dr. Jenouri concluded that Plaintiff had "[m]inimal restriction walking, standing, and sitting long periods; bending, stair climbing, lifting, and carrying." Tr. at p. 287. This finding of "minimal restriction" in walking supports the ALJ's finding that Plaintiff is capable of performing light work. To the extent that "minimal" is a relatively vague term, "recent cases have held that when there is other medical evidence in addition to an RFC evaluation using terms such as 'mild' and 'moderate,' such terms may properly be used in the RFC analysis." *Silsbee v. Colvin*, 2015 WL 4508599, at *14 (N.D.N.Y. July 23, 2015); *Flake v. Comm'r of Soc. Sec.*, 2016 WL 7017355, at *9 (N.D.N.Y. Nov. 10, 2016); *see also Colon v. Acting Comm'r of Soc. Sec.*, 2018 WL 1459490, at *14 (E.D.N.Y. Mar. 23, 2018) ("Courts in the Second Circuit [ ] have held that the term 'minimal restrictions' is not vague—in fact, it is regularly used to determine a claimant's RFC."). The ALJ explained that he gave this opinion significant weight because it was "consistent with Dr. Jenouri's clinical findings":

> Dr. Jenouri observed that the claimant was in no acute distress. His gait and stance were normal and he could fully squat. He also had no difficulty walking on his heels and toes. The claimant used no assistive device and needed no help changing for the exam or getting on and off the exam table. He was also able to rise from a chair without difficulty. Some restricted motion was noted in the claimant's lumbar spine and hips, but straight leg raising was bilaterally negative. He had full range of motion in his cervical spine, shoulders, elbows, wrists, right hand, knees and ankles. He had no muscle atrophy or sensory deficits, and exhibited 5/5 strength in his upper and lower extremities. Despite contraction of the claimant's left ring finger, he also demonstrated 5/5 grip strength and intact hand and finger dexterity bilaterally. All of the claimant's joints were stable and nontender, with no redness, heat, swelling, or effusion.

Tr. at p. 16. Here, there was medical evidence included in addition to the functional assessment, which the ALJ explicitly relied upon in making his RFC assessment. *Id.* Therefore, Dr. Jenouri's determination that Plaintiff had "minimal" restriction in walking and standing provides substantial evidence for the ALJ's finding that Plaintiff could perform light work with certain limitations.

Plaintiff also contends that the determination that Plaintiff could perform light work with some limitations is not supported by substantial evidence because of Dr. Jenouri's 2016 medical source statement, which provided that Plaintiff is "[m]oderately limited to walking and standing periods of two hours and fewer than four hours." Tr. at p. 292. As discussed above in Point III.A.1, the ALJ weighed the opinions and gave Dr. Jenouri's 2016 opinion "somewhat less weight" and did not adopt that finding regarding Plaintiff's walking limitations, which he was entitled to do. *See Brown v. Colvin*, 2013 WL 3384172, at *5. As such, the light work limitation is supported by substantial evidence.

## B. Plaintiff's Contentions Regarding His Back Impairment

Plaintiff contends that the ALJ erred at Step Two by failing to find his back impairment to be severe. Pl.'s Mem. of Law at pp. 19-21. Specifically, Plaintiff contends that the ALJ's analysis on this point is overly conclusory, and unsupported by the medical evidence, which shows Plaintiff's back impairment causes more than minimal limitations. *Id.* The ALJ found that Plaintiff's lumbar osteoarthritis had "either resolved, required little or no treatment, or been adequately controlled with treatment." Tr. at p. 12. Substantial evidence supports this determination. While the medical records reflect that Plaintiff has chronic back pain, the records do reflect that it was controlled with treatment, and the records reflect that he did not seek treatment for it for a period of over two years prior to the hearing. *See* Tr. at pp. 263-277 & 304-309; *see also Howe v. Colvin*, 2013 WL 4534940, at *12 (S.D.N.Y. Aug. 27, 2013).

In any event, were the Court to find that the ALJ did err in his determination that Plaintiff's back impairments were not severe, "he did find several other of Plaintiff's impairments to be severe, continued the sequential analysis, and included Plaintiff's limitations associated with his non-severe impairments in the RFC analysis." *Rodda v. Colvin*, 2013 WL 6839576, at *7 (N.D.N.Y. Dec. 27, 2013); *see also Woodmancy v. Colvin*, 2013 WL 5567553, at *2 (N.D.N.Y. Oct. 9, 2013) & *Stanley v. Colvin*, 2014 WL 1311963, at *3-5 (N.D.N.Y. Mar. 31, 2014); *see also* Tr. at p. 15 (limiting Plaintiff to light work "except he can only occasionally stoop, crawl, and climb stairs, ramps, ladders, ropes and scaffolds," and explaining that "the residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions

imposed by the combined effects of all the claimant's medically determinable impairments.").  Indeed, the ALJ discussed the physicians' medical findings regarding Plaintiff's back in reaching his RFC determination.  *See* Tr. at p. 17.  Therefore, any error in finding Plaintiff's back impairment to be not severe would be harmless.  *See Bender v. Astrue*, 2010 WL 5175023, at *4 (N.D.N.Y. Nov. 29, 2010).

## C.  Plaintiff's Contentions Regarding Step Five

### 1.  Grid Rule

Plaintiff makes two arguments regarding the ALJ's findings at Step Five.  First, he contends that Plaintiff should be found disabled under Grid Rule 201.12, because he cannot meet all the exertional demands of light work and is limited to sedentary work.  Pl.'s Mem. of Law at p. 21.  This argument depends on a finding that the ALJ's determination that Plaintiff can perform light work with some limitations is not supported by substantial evidence; however, the Court found at Point III.A.3 that this finding is supported by substantial evidence.  Therefore, this argument does not provide a basis for remand.

### 2.  The Vocational Expert's Testimony

Plaintiff next contends that the VE's testimony does not provide substantial evidence for finding Plaintiff not disabled.  Plaintiff contends that the VE's testimony was based on a hypothetical that did not fully account for Plaintiff's limitations because the ALJ's RFC was flawed.  Pl.'s Mem. of Law at p. 22.  However, because the Court found the RFC is supported by substantial evidence and because the hypothetical mirrored that RFC, this does not provide a basis for remand.

In addition, Plaintiff argues that the Commissioner did not meet her burden of demonstrating that a sufficient number of jobs exist in the national economy that Plaintiff could perform with his limitations. *Id.* at pp. 22-24. Specifically, Plaintiff contends that the numbers of jobs the VE provided were not for specific DOT titles, but were OES numbers, which apply to large groups of jobs many of which Plaintiff could not perform. *Id.*

The Court finds that substantial evidence supports the ALJ's determination that a sufficient number of jobs exist in the economy that Plaintiff could perform. The ALJ found that

> the vocational expert testified that given all of these factors, such an individual would be able to perform the requirements of representative occupations such as hand packager (DOT 559.687-074), of which there are approximately 489,750 positions in the national economy for the specific DOT job title; laundry worker (DOT 302.685-010), of which there are approximately 929,540 national positions using the specific DOT job title; and folder (DOT 369.687-018), of which there are approximately 420,520 national positions for the specific DOT job title.

Tr. at p. 19.

Plaintiff points to a portion of the VE's testimony that he contends demonstrates that the VE provided OES numbers rather than DOT numbers specific to the job titles. Pl.'s Mem. of Law at p. 22 (citing Tr. at p. 50). The Court finds portions of the transcript containing questioning by Plaintiff's attorney and the VE's responses to be unclear as they discuss discrepancies between numbers relating to the DOT and OES job codes, and breaking down similar jobs. Tr. at pp. 48-50. However, the ALJ multiple times asked for confirmation that the VE was in fact providing the number specific to the DOT job

title, and the VE testified that that was correct. Tr. at pp. 47 (responding "Yes" to the question "Are the job numbers that you gave specific to the DOT title?"), 49 (stating, "we generally don't break the jobs down by the OES numbers. We look them up by the DOT number and that's the number that I have"), & 50 (when asked, "was the number for folder specific to the DOT code?" responding "Yes, it was. Those are the numbers that vocational experts use traditionally for each specific job title."). It thus appears that the ALJ fully understood the VE to be testifying to the DOT numbers for specific job titles. Substantial evidence therefore supports the ALJ's finding that the numbers the VE provided were specific to the provided job titles, and this finding does not provide a basis for remand.

## IV. CONCLUSION

For the reasons stated here, in it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order

upon the parties to this action.

Date:  March 15, 2019
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge